# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| Andrew Fitzgerald, *individually, and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>Jeff Anderson & Associates, PA,<br><br>Defendant. | Case No: 26-cv-01486 (JMB/DJF)<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(6)** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES............................................................................................ ii

INTRODUCTION ....................................................................................................... 1

BACKGROUND ......................................................................................................... 2

I.   The Parties............................................................................................................ 2

II.  The Breach. .......................................................................................................... 3

III. Fitzgerald files this action. ................................................................................... 5

ARGUMENT.............................................................................................................. 7

I.   The FAC must be dismissed in its entirety under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing. ................................................................................................ 7

    A.   Fitzgerald lacks standing for equitable relief. ......................................... 9

    B.   Fitzgerald lacks standing for any requested monetary relief............................. 10

        1.   Increased Risk of Fraud and Identity Theft ...................................... 12

        2.   Lost Time, Annoyance, and Inconvenience....................................... 13

        3.   Diminished Value of Personal Information ....................................... 14

        4.   Benefit of the Bargain ..................................................................... 14

        5.   Anxiety, Emotional Distress, and Loss of Privacy ........................... 15

        6.   Delay in Notice ............................................................................... 16

II.  Counts II and III must be alternatively dismissed under Fed. R. Civ. P. 12(b)(6). ..... 17

    A.   Fitzgerald has not stated a claim for breach of implied contract......................... 17

    B.   Fitzgerald has not stated a claim for breach of the implied covenant of good faith and fair dealing. ................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................17

*Aton Ctr., Inc. v. United Healthcare Ins. Co.*,
  93 Cal.App.5th 1214 (2023) ...................................................................................18

*Bednyak v. Fin. Risk Mitigation, Inc.*,
  739 F.Supp.3d 353 (E.D. La. 2024) ........................................................................14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................17

*Braxton v. State*,
  2026 WL 172434 (D. Minn. Jan. 22, 2026) ............................................................17

*Butler v. U.S. Bancorp*,
  2026 WL 883904 (D. Minn. Mar. 31, 2026) ....................................................2, 8, 14

*City of Clarkson Valley v. Mineta*,
  495 F.3d 567 (8th Cir. 2007) ....................................................................................7

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...........................................................................................13, 15

*Claridge v. RockYou, Inc.*,
  785 F.Supp.2d 855 (N.D. Cal. 2011)...................................................................20, 21

*Devine v. Horizontal Integration, Inc.*,
  2025 WL 3687972 (D. Minn. Dec. 19, 2025) ...................................................Passim

*Fraga v. UKG, Inc.*,
  2022 WL 19486310 (S.D. Fla. May 10, 2022).........................................................14

*Glow in One Mini Golf, LLC v. Walz*,
  37 F.4th 1365 (8th Cir. 2022)....................................................................................2

*Gorog v. Best Buy Co.*,
  760 F.3d 787 (8th Cir. 2014)...................................................................................17

*Greenstein v. Noblr Reciprocal Exch.*,
  585 F.Supp.3d 1220 (N.D. Cal. 2022).....................................................................16

*Gryc v. Lewis*,
  410 N.W.2d 888 (Minn. Ct. App. 1987) .................................................................18

*Hammerling v. Google LLC*,
  615 F.Supp.3d 1069 (N.D. Cal. 2022).....................................................................18

*Holmes v. Elephant Ins. Co.*,
 156 F.4th 413 (4th Cir. 2025)..................................................................................13, 15

*In re Google RTB Consumer Priv. Litig.*,
 606 F.Supp.3d 935 (N.D. Cal. 2022).............................................................................19

*In re Pawn Am. Consumer Data Breach Litig.*,
 2022 WL 3159874 (D. Minn. Aug. 8, 2022)....................................................................9

*In re SuperValu, Inc.*,
 870 F.3d 763 (8th Cir. 2017)...........................................................................8, 12, 13, 15

*JMH Land Dev. Co. LLC v. Siegle Fam. Ltd. P'ship*,
 2023 WL 2125965 (Minn. Ct. App. Feb. 21, 2023).......................................................20

*Katch, LLC v. Sweetser*,
 143 F.Supp.3d 854 (D. Minn. 2015) ..............................................................................18

*Longenecker-Wells v. Benecard Servs. Inc.*,
 658 Fed. App'x 659 (3d Cir. 2016) ................................................................................19

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) .........................................................................................................8

*Metro. Transp. Network, Inc. v. Collaborative Student Transp. of Minn., LLC*,
 6 N.W.3d 771 (Minn. Ct. App. 2024) ............................................................................19

*Patterson v. Associated Wholesale Grocers, Inc.*,
 2026 WL 395115 (D. Kan. Feb. 12, 2026)......................................................................10

*Prestby v. A&A Servs., LLC*,
 2026 WL 26128 (D. Neb. Jan. 5, 2026) ...................................................................14, 15

*Redko Innovations, Inc. v. Walmart, Inc.*,
 2025 WL 863545 (D. Minn. Mar. 19, 2025)...................................................................18

*Spokeo v. Robins*,
 578 U.S. 330 (2016) .........................................................................................................8

*TransUnion LLC v. Ramirez*,
 594 U.S. 413 (2021) ........................................................................................8, 9, 10, 12

*Tsao v. Captiva MVP Rest. Partners, LLC*,
 986 F.3d 1332 (11th Cir. 2021).......................................................................................12

*Webb Bus. Promotions, Inc. v. Am. Elec. & Entm't Corp.*,
 617 N.W.2d 67 (Minn. 2000) .........................................................................................18

*Webb v. Injured Workers Pharmacy, LLC*,
 72 F.4th 365 (1st Cir. 2023) .............................................................................................9

*Weekes v. Cohen Cleary P.C.*,
 723 F.Supp.3d 97 (D. Mass. 2024).............................................................................19, 20

iii

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................ 1, 7
Fed. R. Civ. P. 12(b)(6) ........................................................................ 1, 2, 17
Fed. R. Civ. P. 12(h)(3) ............................................................................... 7

## INTRODUCTION

Article III bars this putative data-breach class action because Plaintiff Andrew Fitzgerald alleges nothing more than speculation masquerading as injury. Fitzgerald demands injunctive and monetary relief, but he alleges no facts showing he has suffered, or is imminently threatened with, any concrete injury that would entitle him to any form of relief. Instead, Fitzgerald resorts to boilerplate assertions and conjecture that his information *might* be misused, or a second breach *might* occur, at some time in the future. Fitzgerald's generalized allegations share the same Article III standing defects this Court (and many others) have found fatal in materially similar cases.

*First*, Fitzgerald seeks equitable relief in the form of an injunction requiring that Defendant Jeff Anderson & Associates, PA ("JAA") implement a host of cybersecurity measures to safeguard against a future data breach. But Fitzgerald's allegations are confined to JAA's security measures "*before* the Data Breach," and he expressly disclaims any knowledge of JAA's current data security practices—meaning he has alleged only "the same risk of future cyberhacking as virtually every holder of private data." *Devine v. Horizontal Integration, Inc.*, 2025 WL 3687972, at \*3 (D. Minn. Dec. 19, 2025). Because Fitzgerald can allege no facts showing an imminent and substantial risk of a future breach, Article III forecloses his requested equitable relief.

*Second*, Fitzgerald requests monetary relief, but he has alleged no concrete and particularized injury to pursue it. Fitzgerald alleges no facts showing actual fraud, identity theft, or other misuse of his information (or any other class member). Nor has he alleged facts showing a non-speculative risk that such misuse will occur in the future. While

1

Fitzgerald pleads other supposed injuries based on a perceived risk that his information will be misused in the future—*e.g.*, lost time, inconvenience, and emotional harm—he cannot manufacture standing through reliance on a potential future injury that is itself speculative. *Devine*, 2025 WL 3687972, at *5. Like *Devine*, Fitzgerald does not "clearly allege facts" showing any concrete and particularized injury, and his claims must be dismissed for the same reasons. *Id*. at *4.

**Finally**, even if Fitzgerald could show standing (he cannot), the FAC still fails to state claims for breach of implied contract or the implied covenant of good faith and fair dealing. Thus, Counts II and III must be alternatively dismissed under Rule 12(b)(6). Accordingly, for these reasons and the reasons set forth below, the Court should grant the motion.

## BACKGROUND

### I.     The Parties.

Plaintiff Andrew Fitzgerald is a resident and citizen of the State of California. (FAC ¶ 10.) Defendant JAA is a private law firm with a principal place of business in St. Paul, Minnesota. (*Id.* ¶ 20.) JAA represents survivors of childhood sexual abuse. (*Id.*)

On June 7, 2022, Fitzgerald retained JAA as legal counsel via a Lawyer-Client Contingent Fee Agreement ("Agreement"). (Finnegan Decl. Ex. A.)[1] Fitzgerald alleges that

---

[1] In determining Article III standing, courts apply a Rule 12(b)(6) standard, "accepting as true the factual allegations in the complaint and determining whether these allegations plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *Butler v. U.S. Bancorp*, 2026 WL 883904, at *2 (D. Minn. Mar. 31, 2026) (cleaned up). The Court can therefore consider documents embraced by the FAC and the authenticity of which are undisputed. *E.g.*, *Glow*

2

he provided JAA with "highly sensitive Private Information . . . in connection with the services [he] obtained" and as "a condition of [the] relationship." (FAC ¶¶ 11, 39-40.) The FAC defines the term "Private Information" in "the aggregate" and as inclusive of "[a]ll such information" stored within JAA's network that may qualify as "personally identifiable information" or "PII." (*Id.* ¶ 1 & n.1.) Fitzgerald does not allege or specify the "Private Information" JAA received from him or any other class member. (*See generally id.*)

## II.    The Breach.

In September 2025, JAA fell victim to a "cyberattack" in which "cybercriminals infiltrated" JAA's network and "accessed the Private Information which was being kept there" (hereinafter, the "Breach"). (FAC ¶ 2.) Fitzgerald alleges that his own information "was among the data accessed by an unauthorized third party," although he does not allege which information. (*Id.* ¶¶ 11, 31.)

On February 11, 2026, JAA sent Fitzgerald an "email notice" informing him of the Breach. (Finnegan Decl. Ex. B; *accord* FAC ¶ 3.) This email gave an overview of the Breach, and JAA's response, and cautioned that "none of [Fitzgerald's] data was made public" and JAA had "no reason to believe that it ever will." (Finnegan Decl. Ex. B)

---

*in One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1370 (8th Cir. 2022). JAA relies on three such documents filed as exhibits to the Declaration of Mike Finnegan ("Finnegan Decl."): Fitzgerald's engagement agreement with JAA and two notices he received from JAA concerning the Breach. From these exhibits, the Court can discern facts omitted from (though embraced by) the FAC, including the terms of the parties' contract and the information Fitzgerald was notified as "potentially impacted" by the Breach. (*See, e.g.*, FAC ¶¶ 102-106 (alleging breach of implied covenant in the parties' contract), ¶ 3 (alleging receipt of "email notice" stating a "formal letter will follow"), ¶ 14 (alleging receipt of "a letter from [JAA] stating [Fitzgerald]'s Private Information was involved in the [] Breach (the 'Notice')").)

3

JAA explained that "there is no evidence of any misuse" and that JAA had **"also subsequently confirmed that all the impacted data was securely deleted."** (*Id.* (emphasis in original).) The email advised that a "formal letter" would follow with additional details, including Fitzgerald's "particular personal information involved." (*Id.*; *accord* FAC ¶ 3.)

By letter dated February 10, 2026, JAA mailed Fitzgerald a "Notice of Data Breach." (Finnegan Decl. Ex. C ("Notice"); *accord* FAC ¶¶ 14, 33.) Like the email, the Notice provided an overview of JAA's findings concerning the Breach and actions JAA had taken in response. (Notice at 1.) For example, the Notice explained that, in September 2025, JAA detected "suspicious activity involving certain computer systems," which was later revealed to be part of a larger cybersecurity event "impact[ing] thousands of reputable organizations that rely upon the same firewall protection technology." (*Id.*) JAA "immediately engaged leading cybersecurity specialists to investigate and determine the nature and scope of the incident." (*Id.*) The investigation revealed that, on September 18, 2025, an unauthorized party accessed JAA's computer environment and "copied certain data." (*Id.*)

The Notice advised Fitzgerald that JAA had undertaken "a comprehensive review to determine what information was involved and to whom it related." (*Id.*) This review concluded on December 8, 2025. (*Id.*) The Notice stated that Fitzgerald's Social Security number was "present in the potentially impacted data," but reiterated that there is "no evidence that [Fitzgerald's] information has been made public or misused as a result of this incident" and "no reason to believe that it ever will." (*Id.*)

4

The Notice also advised of JAA's efforts to implement "additional safeguards" ensuring the security of its systems, which would continue to undergo "regular and thorough cybersecurity vulnerability testing and assessments from third-party experts." (*Id.*) Finally, the Notice provided Fitzgerald with instructions to enroll in "complimentary credit monitoring services for 24 months through Experian, as an added precaution." (*Id.* at 2; *see also id.* at 3–4.)

### III.    Fitzgerald files this action.

On February 17, Fitzgerald filed his original complaint against JAA. (ECF No. 1.) In his now-operative FAC, Fitzgerald asserts three claims individually and on behalf of a putative class defined to include all U.S. individuals "whose Private Information was exposed to unauthorized third parties as a result of the data breach purportedly discovered by [JAA] on or before September 2025." (FAC ¶ 22; *see also id.* ¶ 23 (defining exclusions).)

In Count I, Fitzgerald asserts a claim of negligence, alleging JAA owed a duty of reasonable care to "secure and safeguard" Fitzgerald's Private Information and to "use commercially reasonable methods to do so." (*Id.* ¶¶ 70–72.) Fitzgerald claims JAA breached these duties by "failing to provide fair, reasonable or adequate computer systems and data security practices." (*Id.* ¶ 76; *see also id.* ¶ 80.)

In Count II, Fitzgerald asserts a claim for breach of implied contract, alleging that JAA entered "implied contracts" with Fitzgerald and the class "to implement data security adequate to safeguard and protect the privacy" of their Private Information. (*Id.* ¶ 95; *see also id.* ¶ 97.) Fitzgerald alleges JAA breached these implied contracts "by failing to

5

safeguard and protect" the Private Information or to "provide timely and accurate notice" of its inclusion in the Breach. (*Id.* ¶ 100.)

In Count III, Fitzgerald asserts a claim for breach of the implied covenant of good faith and fair dealing. Fitzgerald alleges JAA breached the implied covenant "by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose" the Breach, and by the "continued acceptance of Private Information and storage of other personal information after [JAA] knew or should have known of the security vulnerabilities" in the Breach. (*Id.* ¶ 105.)

The FAC provides scant details or factual allegations as to alleged harm that Fitzgerald has suffered from the Breach. Fitzgerald generally alleges having "spent time" on prophylactic measures in response to the Breach—*i.e.*, "verifying the legitimacy and impact" of the Breach, "exploring credit monitoring and identity theft insurance options," "self-monitoring" accounts, and "seeking legal counsel" on "options for remedying and/or mitigating the effects" of the Breach. (*Id.* ¶ 15.) Fitzgerald also claims "diminution in []  value" of unspecified Private Information and "annoyance, interference and inconvenience" stemming from "anxiety and increased concerns for the loss of privacy" after the Breach. (*Id.* ¶¶ 16–17.) Finally, Fitzgerald claims he faces "substantially increased risk of fraud, identity theft and misuse resulting from [his] Private Information being placed in the hands of unauthorized third parties/criminals," (*id.* ¶ 18), although he does not allege facts suggesting any such fraud or misuse has occurred—either with respect to his own data or that of any other putative class member.

In addition to the foregoing allegations of ostensible injury suffered by Fitzgerald, the FAC's count language incorporates a litany of boilerplate allegations of supposed actual or imminent harm suffered by "[Fitzgerald] and Class Members," although these allegations lack factual support and do not describe an actual injury suffered by Fitzgerald or any putative class member. (*See id.* ¶¶ 91–93, 101, 106.) Fitzgerald also seeks equitable injunctive relief generally centered on JAA's data security practices. (*Id.* at 25–27.)

## ARGUMENT

The FAC must be dismissed in its entirety under Rule 12(b)(1). Fitzgerald cannot meet his burden to establish Article III standing, having not clearly alleged any concrete and particularized injury-in-fact nor the traceability of such an injury to JAA's conduct. As shown below, Fitzgerald offers a spin on the same non-particularized, boilerplate injury allegations that courts consistently find deficient absent factual allegations showing the plaintiff's own information has been misused. Even assuming Fitzgerald can sufficiently allege standing (he cannot), the FAC still fails to state a claim for breach of implied contract or of the implied covenant of good faith and fair dealing, and these claims must be alternatively dismissed on this basis.

**I.      The FAC must be dismissed in its entirety under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing.**

Article III standing is a jurisdictional prerequisite and must be established before a claim's merits are assessed. Fed. R. Civ. P. 12(h)(3); *accord City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). At the pleading stage, a plaintiff must "clearly allege facts that establish three elements: (1) the plaintiff has suffered an injury in fact;

(2) the claimed injury is 'fairly traceable' to the defendant's alleged conduct; and (3) the relief sought will redress the claimed injury." *Butler*, 2026 WL 883904, at *2 (citing *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017)). These requirements "do not change" in the class context; a named plaintiff must establish their own standing to sue and cannot rely on injuries suffered by unnamed class members. *SuperValu*, 870 F.3d at 768.

Injury-in-fact is the "first and foremost" of standing's three elements. *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up). To establish injury-in-fact, Fitzgerald must show the invasion of a "legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (cleaned up). A "particularized" injury is one that affects the plaintiff "in a personal and individual way." *Id.* A "concrete" injury must be "*de facto*"; "that is, it must actually exist." *Id.* at 340.

For traceability, Fitzgerald must show "a causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The injury must be "fairly traceable to the challenged action of the defendant and not the result of the independent action of a third party not before the court." *Devine*, 2025 WL 3687972, at *2.

Finally, "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Here, Fitzgerald seeks both equitable and monetary relief and must establish standing for each.

8

### A.    Fitzgerald lacks standing for equitable relief.

Fitzgerald seeks injunctive relief enjoining JAA from engaging "in the wrongful conduct" alleged in the FAC and requiring that JAA implement a laundry list of cybersecurity measures to ensure that a second data breach does not occur in the future. (FAC at 25-27, ¶¶ 3–5.a-l.) Such an injunction—requiring a data-breach defendant "to improve its cybersecurity systems"—"cannot protect [] plaintiffs from future misuse of their PII by [] individuals they allege now possess it. Any such relief would safeguard only against a future breach." *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 378 (1st Cir. 2023).

"When a plaintiff seeks equitable relief to prevent future harm from occurring, concrete injuries can include 'the risk of real harm,' so long as the risk is 'sufficiently imminent and substantial.'" *Devine*, 2025 WL 3687972, at *3 (quoting *TransUnion*, 594 U.S. at 435–36). But "[t]he universal interest in the security of one's private data does not equate to a substantial and imminent risk of harm." *Id.* (quoting *In re Pawn Am. Consumer Data Breach Litig.*, 2022 WL 3159874, at *3 (D. Minn. Aug. 8, 2022)). Thus, to obtain the injunctive relief requested, "the allegations in the [FAC] must establish a likelihood that [JAA] will experience a future breach." *Id.*

Here, the FAC does not show an imminent and substantial risk of future harm—*i.e.*, that JAA will experience a second data breach—so Fitzgerald does not have standing to pursue his requested injunctive relief. Although Fitzgerald offers general allegations on data security best practices and universal risks faced by those who do not follow them, Fitzgerald alleges only that JAA "failed to implement these measures *before* the [] Breach."

9

*Devine*, 2025 WL 3687972, at *3 (emphasis in original); *accord Patterson v. Associated Wholesale Grocers, Inc.*, 2026 WL 395115, at *9 (D. Kan. Feb. 12, 2026) (similar). Fitzgerald disclaims any knowledge of JAA's current cybersecurity measures, including those JAA has implemented since the Breach occurred. (*See* FAC ¶ 37 (disclaiming knowledge of "the particular malware used and what steps are being taken, if any, to secure the[] Private Information going forward").) As Fitzgerald tells it, he can only "speculate as to . . . how exactly [JAA] intends to enhance its information security systems and monitoring capabilities so as to prevent further breaches." (*Id.*) But Article III leaves no room for such speculation. Fitzgerald has alleged only "the same risk of future cyberhacking as virtually every holder of private data." *Devine*, 2025 WL 3687972, at *3. Because the risk of JAA experiencing a data breach in the future is speculative and not sufficiently imminent, the Court must dismiss Fitzgerald's claims for injunctive relief.

### B. Fitzgerald lacks standing for any requested monetary relief.

Fitzgerald also seeks monetary damages. (FAC at 25 ¶ 2.) To establish standing on a claim for damages, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm . . . unless the exposure to the risk of future harm itself causes a separate concrete harm." *TransUnion*, 594 U.S. at 436. "Under this portion of the analysis, the focus shifts from harm that [Fitzgerald] might suffer from future breaches" to harm that he "has suffered or will likely suffer because of the data breach that already occurred." *Devine*, 2025 WL 3687972, at *3.

Before addressing the supposed varieties of present harm the FAC *does* allege, it is important to note what it does not. Fitzgerald *does not* allege facts showing any concrete

10

and particularized harm has materialized already. Fitzgerald *does not* allege, for example, facts showing any actual misuse of his Private Information—nor that of any putative class member—such as actual identity theft, fraudulent or unauthorized charges, a traceable reduction in credit score, or some other indicator of use. Similarly, Fitzgerald *does not* plead facts showing his Private Information was published on the "dark web" or otherwise. (*See, e.g.*, FAC ¶ 38 ("[Fitzgerald]'s and Class Members' Private Information *may* end up for sale on the dark web, or simply fall into the hands of companies that will use [it] for targeted marketing . . . .") (emphasis added).)

Instead, Fitzgerald pleads injuries associated with risk of future "injuries" that have not yet materialized and that, lacking any factual support, are too speculative to show any present injury. Fitzgerald also pleads other derivative injuries—such as lost time, inconvenience, and emotional harm—owing to perceived risks that his Private Information will be misused at some time in the future. But Fitzgerald cannot manufacture standing through reliance on future injuries that are themselves speculative. Finally, although the FAC includes boilerplate count language concerning the occurrence of "actual" fraud and identity theft, these threadbare allegations lack factual support, are not specific to Fitzgerald or any other class member and pay mere lip service to the kinds of injuries that courts have found sufficient in data breach cases. These vague allegations do not constitute the "clear" facts showing concrete and particularized injury that Article III standing demands, as discussed in more detail below.

### 1.      Increased Risk of Fraud and Identity Theft

Fitzgerald alleges suffering "imminent and impending injury arising from the substantially increased risk of fraud, identity theft and misuse resulting from [his] Private Information being placed in the hands of unauthorized third parties/criminals." (FAC ¶ 18; *see also id.* ¶¶ 82, 91(vii), 93 (similar).) These allegations are insufficient because the FAC "includes no allegations that [Fitzgerald]'s unique PII/PHI has been affected by the breach, that his PII/PHI has been misused in any way, or that he has experienced any concrete or particularized injury from [an] alleged disclosure of his own PII/PHI." *Devine*, 2025 WL 3687972, at *4; *see also TransUnion*, 594 U.S. at 437–38.

To be sure, the FAC's count language does make cursory reference to "actual identity theft" and "fraud and abuse." (FAC ¶¶ 91(i), 101(ii).) But this appears to be no more than a cut-and-paste of stock language from other data-breach class complaints, designed to plead around Article III's standing requirements. Courts consistently recognize that such "vague, conclusory allegations that members of the class have suffered [] actual misuse of their personal data . . . . are not enough to confer standing." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021); *accord SuperValu*, 870 F.3d at 768 ("[A]t the pleading stage, plaintiffs must clearly allege facts demonstrating the elements of standing.") (cleaned up). Because Fitzgerald alleges no facts showing that his own (or anyone else's) Private Information has been misused because of the Breach, he has not pleaded facts to show a substantial and imminent risk of injury associated with fraud or identity theft. Fitzgerald has thus failed to establish standing on this basis.

12

## 2.     Lost Time, Annoyance, and Inconvenience

Fitzgerald also alleges "lost time," such as time spent "verifying the legitimacy and impact" of the Breach, "exploring credit monitoring and identity theft insurance options," "self-monitoring" accounts, and exploring options for "remedying and/or mitigating the effects" of the Breach. (FAC ¶ 15; *see also id.* ¶ 17 ("lost time, annoyance, interference, and inconvenience").) Relatedly, and although Fitzgerald makes no personalized factual allegations, the FAC's count language also alludes to "lost work time," as well as "expenses" and "lost opportunity costs" for time spent on these and other prophylactic measures, such as "efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft." (*Id.* ¶¶ 91(iv)-(v), (viii), 101(v).)

It's well established that a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Thus, if data-breach "plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury." *SuperValu*, 870 F.3d at 771 (collecting cases); *accord Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 433–35 (4th Cir. 2025).

As discussed above, Fitzgerald has not pled any facts showing actual misuse of his Private Information at all, let alone misuse that is traceable to the Breach, and he cannot show a substantial and imminent risk of fraud or identity theft in the future. It follows that he cannot show Article III injury based on "time, effort, or costs that he has spent [] in

13

response to a purely speculative threat." *Devine*, 2025 WL 3687972, at *5. Fitzgerald has not shown standing on this basis.

### 3.   Diminished Value of Personal Information

Fitzgerald alleges suffering "diminution" in value of his Private Information. (FAC ¶ 16.) But beyond generalized allegations concerning the supposed value of Private Information on the "dark web,"[2] (*id.* ¶¶ 58–59), Fitzgerald makes no allegations concerning the asserted monetary value of his own Private Information or how that value has been reduced because of the Breach. Nor does the FAC allege that Fitzgerald "tried to sell his PII/PHI and was forced to accept less as a result of the [] Breach." *Devine*, 2025 WL 3687972, at *6; *see also Butler*, 2026 WL 883904, at *4; *Fraga v. UKG, Inc.*, 2022 WL 19486310, at *11–12 (S.D. Fla. May 10, 2022) (summarizing flaws of "diminished-value theory of standing" in data-breach cases, both as to "black market" and "legitimate" markets for PII); *Prestby v. A&A Servs., LLC*, 2026 WL 26128, at *10 (D. Neb. Jan. 5, 2026) (collecting cases). Thus, Fitzgerald cannot allege an Article III injury predicated on diminution in value of his Private Information.

### 4.   Benefit of the Bargain

Relatedly, the FAC alleges the Breach denied Fitzgerald and class members "the full benefit of their bargains" with JAA. (FAC ¶ 106.) But without establishing any economic value of his Private Information and having not alleged facts showing "any

---

[2] In this and most other respects, the FAC "reads more like a journal article on data security than a complaint filed in accordance with the Federal Rules of Civil Procedure." *Bednyak v. Fin. Risk Mitigation, Inc.*, 739 F.Supp.3d 353, 362 n.4 (E.D. La. 2024).

14

misuse of his or any other" plaintiff's Private Information, Fitzgerald lacks standing to sue on a theory that the Breach denied him a benefit of the bargain. *See Devine*, 2025 WL 3687972, at *6 n.3; *accord Prestby*, 2026 WL 26128, at *9–10.

### 5.        Anxiety, Emotional Distress, and Loss of Privacy

Fitzgerald alleges he has developed "anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using and selling" his Private Information. (FAC ¶ 17; *see also id.* ¶ 92 (cursory allegation of "anxiety, emotional distress, [and] loss of privacy").)

This category of injury fails for the same reasons as Fitzgerald's allegations of lost time. As *SuperValu* affirmed, a data-breach plaintiff may not manufacture standing by asserting injuries resulting from a risk of future identity theft or other misuse of data that is itself not substantial or certainly impending. 870 F.3d at 771. Thus, "although emotional distress is distinct from mitigation expenditures, it poses much the same problem." *Holmes*, 156 F.4th at 434; *accord Clapper*, 568 U.S. at 416 (plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). And the rule applies equally to claims asserting "loss of privacy" as it does to emotional distress and anxiety. *E.g.*, *Prestby*, 2026 WL 26128, at *12 (plaintiffs making "no factual allegation of a public posting on the dark web or otherwise" could not show concrete injury from loss of privacy).[3]

---

[3] The FAC's cut-and-paste count language does make cursory reference to "the illegal sale of the compromised data on the dark web." (FAC ¶ 101.) Here again, this bare allegation seems only intended to track with pleading requirements for standing, and the FAC includes no fact allegations to suggest the Breach has caused Fitzgerald's information (or

The bottom line is that without showing there is a substantial or certainly impending risk of suffering fraud, identity theft, or any other actual misuse of his Private Information, Fitzgerald cannot establish standing using prophylactic measures taken over a perceived risk of these events. Because the FAC leaves the occurrence of such events to speculation, Fitzgerald has not established standing based on anxiety, emotional distress, or lost privacy.

### 6.   Delay in Notice

Fitzgerald alleges harm associated with an ostensible delay by JAA in notifying Fitzgerald and class members of the Breach. (*See* FAC ¶¶ 83–85.) This delay, Fitzgerald alleges, inhibited his ability to "take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of [] Private Information. (*Id.* ¶ 83; *see also id.* ¶ 85 (similar).)

"Delay of notification is insufficient to establish injury-in-fact." *Greenstein v. Noblr Reciprocal Exch.*, 585 F.Supp.3d 1220, 1231 (N.D. Cal. 2022) (collecting cases). As noted above, Fitzgerald's claimed lost time and expense for prophylactic measures to guard against possible identity theft or other misuse of his data are not a concrete and particularized injury because he cannot show that those events are themselves certainly impending or substantially likely to occur. The same reasoning defeats any claim of standing for an alleged inability to *take* such measures to mitigate a speculative future

anyone else's) to be sold or published on the dark web. (*See also id.* ¶ 38 (alleging that Fitzgerald's Private Information "*may* end up for sale on the dark web" in the future).) These allegations fall well short of showing such a sale has occurred or establishing Article III standing based on a resulting injury. *See Prestby*, 2026 WL 26128, at *12 n.8 ("[T]he plaintiffs' claim that their unencrypted Private Information will end up for sale on the dark web because that is the *modus operandi* of hackers and cybercriminals is speculative.").

injury. Fitzgerald has not alleged facts showing that, from the time the Breach occurred to his receipt of the Notice, he suffered any concrete or traceable harm from an inability to "mitigate" harm or "thwart future misuse" of his Private Information. Accordingly, Fitzgerald cannot show standing based on allegations of untimely notice.

**II.    Counts II and III must be alternatively dismissed under Fed. R. Civ. P. 12(b)(6).**

Even assuming Fitzgerald can establish Article III standing (he cannot), Counts II and III must be alternatively dismissed for failure to state a claim. Under Rule 12(b)(6), a court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). The factual allegations must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and "state a claim to relief that is plausible on its face," *id.* at 570. Assessing a claim's plausibility "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, "courts need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations." *Braxton v. State*, 2026 WL 172434, at *1 (D. Minn. Jan. 22, 2026).

**A.    Fitzgerald has not stated a claim for breach of implied contract.**

"A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words

but is implied from the promisor's conduct."[4] *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal.App.5th 1214, 1230 (2023); *accord Gryc v. Lewis*, 410 N.W.2d 888, 891 (Minn. Ct. App. 1987). "Like an express contract, an implied contract requires a meeting of minds or an ascertained agreement." *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1095 (N.D. Cal. 2022); *accord Gryc*, 410 N.W.2d at 891. To plausibly allege an implied-in-fact contract, Fitzgerald must plead "circumstances that clearly and unequivocally indicate the intention of the parties to enter into a contract." *Redko Innovations, Inc. v. Walmart, Inc.*, 2025 WL 863545, at *6 (D. Minn. Mar. 19, 2025) (quoting *Webb Bus. Promotions, Inc. v. Am. Elec. & Entm't Corp.*, 617 N.W.2d 67, 75 (Minn. 2000)); *accord Aton Ctr.*, 93 Cal.App.5th at 1231 ("Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.").

Fitzgerald has not plausibly alleged mutual assent as to any agreement on data security. The only allegation offered to show a meeting of the minds is that Fitzgerald was asked, and "required," to provide unspecified Private Information "as part of [JAA]'s regular business practices." (FAC ¶ 96; *see also id.* ¶¶ 97–98.) But the threadbare

---

[4] The Agreement "is to be interpreted in accordance with California law." (Agmt. at 4.) The Agreement does not go further to specify that California law governs claims relating to or arising from the Agreement, although it is possible that California law still governs Fitzgerald's implied contract and implied covenant claims. *Cf. Katch, LLC v. Sweetser*, 143 F.Supp.3d 854, 866 (D. Minn. 2015) ("Language directing that an agreement be construed in accordance with the laws of a particular state can mean that provision controls the law applicable to a closely related tort claim."). Regardless, research has uncovered no outcome determinative conflict between California and Minnesota law with respect to Counts II and III, which fail under the law of either State.

allegation that Fitzgerald provided certain information as a condition of his representation does not—and cannot—establish mutual assent as to the ways JAA would safeguard that information. *Weekes v. Cohen Cleary P.C.*, 723 F.Supp.3d 97, 104 (D. Mass. 2024) (dismissing identical claim against law firm); *see also, e.g.*, *Longenecker-Wells v. Benecard Servs. Inc.*, 658 Fed. App'x 659, 662 (3d Cir. 2016) (allegation that defendant "required Plaintiffs' personal information as a prerequisite to employment . . . . did not create a contractual promise to safeguard that information, especially from third party hackers"). This is especially true when—as here—the parties entered a fully integrated written contract containing no covenant on data security like that which Fitzgerald seeks to impose. (*See* Agmt. at 4 ("This agreement states the entire agreement between me and the Lawyers, and takes the place of any earlier oral or written agreements.").)

Having failed to allege any meeting of the minds on an agreement for data security—let alone the parties' clear and unequivocal intention—Fitzgerald has not stated a claim for breach of implied contract.

### B. Fitzgerald has not stated a claim for breach of the implied covenant of good faith and fair dealing.

For at least two reasons, Fitzgerald has not stated a claim for breach of the implied covenant of good faith and fair dealing. First, "the covenant of good faith and fair dealing cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *In re Google RTB Consumer Priv. Litig.*, 606 F.Supp.3d 935, 945 (N.D. Cal. 2022) (quotations omitted); *accord Metro. Transp. Network, Inc. v. Collaborative Student Transp. of Minn.*, *LLC*, 6 N.W.3d 771, 782

19

(Minn. Ct. App. 2024), *rev. denied* (July 23, 2024) ("Minnesota does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing based on terms not included in the contract."). And when "there is no implied contract between the parties concerning the protection of plaintiff's PII [], the claim for breach of the implied covenant of good faith and fair dealing will [also] be dismissed." *Weekes*, 723 F.Supp.3d at 104.

Here, the express terms of the Agreement impose no data security obligations on JAA, let alone of the variety Fitzgerald seeks to impose. (*See generally* Agmt.) Nor, as explained *supra*, can Fitzgerald plausibly establish an implied contract in this regard. Thus, Count III fails on this basis.

Second, to state a claim for breach of the implied covenant, Fitzgerald "must allege more than a mere contractual breach, and must go further by alleging a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Claridge v. RockYou, Inc.*, 785 F.Supp.2d 855, 865 (N.D. Cal. 2011) (quotations omitted); *accord JMH Land Dev. Co. LLC v. Siegle Fam. Ltd. P'ship*, 2023 WL 2125965, at *8 (Minn. Ct. App. Feb. 21, 2023) (requiring "evidence that the accused party refused to fulfill a duty or contractual obligation based on an ulterior motive, not based on simply a mistake or negligence").

In data breach cases, merely alleging a defendant's failure "to take commercially reasonable steps to safeguard and secure" the plaintiff's information or to "promptly and sufficiently notify" them of the data breach does not state a claim for breach of the implied

20

covenant. *Claridge*, 785 F.Supp.2d at 865. Nor will alleging in "conclusory terms" that such failures were "consciously and deliberately" executed, without providing "supporting or factual allegations that adequately allege the type of conscious and deliberate acts." *Id.*

Here, the FAC makes only bald and conclusory allegations of "intentional" or "willful" conduct. (*See, e.g.*, FAC ¶¶ 5, 67, 68.) And when it does, Fitzgerald does not even allege with certainty that intentional or willful conduct occurred; in each case, Fitzgerald musters only that JAA's conduct was *either* "intentional[], willful[], reckless[] and/or negligent[]." (*Id.* ¶ 5; *see also id.* ¶¶ 67–68.) Moreover, Fitzgerald offers no supporting factual allegations that would support the incredible inference that JAA deliberately caused the Breach or otherwise acted with an ulterior motive. Thus, Count III must be alternatively dismissed on this basis.

## CONCLUSION

For the foregoing reasons, JAA respectfully requests that the motion be granted and that the FAC be dismissed in its entirety.

Respectfully Submitted,

**CIRESI CONLIN LLP**

Dated: April 14, 2026            By:   *s/Gus Cochran*
                                        Barry M. Landy (#391307)
                                        Patrick "Gus" Cochran (#401191)
                                        225 South Sixth Street
                                        Suite 4000
                                        Minneapolis, MN 55402
                                        Phone: (612) 361-8200
                                        bml@ciresiconlin.com
                                        pac@ciresiconlin.com

21

*Attorneys for Defendant*
*Jeff Anderson & Associates, PA*

22